GULOTTA, Judge.
This is a suit for personal injuries arising out of an automobile accident occurring on March 31, 1972, in the City of New Orleans.
Prior to the filing of the suit, defendant, Liberty Mutual Insurance Company, “advanced” to plaintiff the sum of $2,579.36. In addition, they reimbursed plaintiff for the cost of property damage sustained by plaintiff’s vehicle.
Plaintiff claims that as a result of the accident he suffered contusions of the upper abdomen, contusions of the right lower chest, a bruised liver, contusion and strain of the left knee and of the left shoulder, and a torn cartilage of the right knee. According to plaintiff, he is entitled to an award of $30,000.00 including the cartilage injury of the right knee. The trial judge dismissed plaintiff’s suit. Plaintiff appeals.
No dispute exists on the liability question. We are confronted only with the question of quantum. In this connection, no dispute exists as to the injuries of the abdomen, shoulder, chest and left knee. Counsel for plaintiff stipulated that $2,579.36 was adequate compensation to plaintiff for these injuries.
The dispute surrounds whether or not cartilage or ligament damage to the right knee was caused by the accident on March 31, 1972, or by a subsequent motorcycle accident which occurred on July 4, 1972. No reasons were assigned for a dismissal of plaintiff’s suit by the trial judge. Apparently the court concluded plaintiff failed to carry his burden of showing that the damaged right knee resulted from the March 31st accident. We affirm.
In this respect plaintiff’s main problem is that his testimony, which is supported by the testimony of his mother, is not supported by any medical evidence. Plaintiff testified that since the March 31, 1972 accident, his knee will lock in place and give out. He also testified that if he kneels for more than five minutes, his knee will commence to swell shortly thereafter. Mrs. Jackson, plaintiff’s mother, testified that after the first accident plaintiff’s right knee was swollen; that he had to walk with crutches; and, that he had to keep his knee propped up on a stool. None of the doctors who testified at trial, however, indicated that these complaints were made at a point in time subsequent to. the March 31st accident and prior to the July 4, 1972 motorcycle accident in which plaintiff was injured.
Dr. Paul Naccari, plaintiff’s treating physician after the first accident, testified that on plaintiff’s initial visit he had no complaints of pain referable to the right knee, and that not until a week later, did plaintiff complain of some minor pain in his right knee. Some attempt was made by plaintiff to show that Dr. Naccari’s records which indicated the left knee was injured were incorrect, and that the x-rays were incorrectly labeled as those of the left knee. Dr. Naccari stated, however, that he was reasonably sure that the x-rays on April 7, 1972, were of the left knee and not of the right knee.
According to Dr. Naccari, after the initial visit on April 1, 1972, Jackson returned on April 7 and April 10, for heat treatments. He returned to Dr. Naccari’s office again on June 20, 1972, at which time Jackson complained of a respiratory infection. Dr. Naccari indicated that between April 10 and June 20, according to his knowledge, plaintiff did not receive any *314 treatment for problems with his knees. Dr. Naccari did not see plaintiff thereafter until July 5, 1972, after the motorcycle accident, at which time plaintiff specifically complained of an injury to the right knee. Dr. Naccari found that plaintiff had swelling over the area of the right knee cap with an accumulation of fluid and some tenderness laterally and medially around the joint. When plaintiff’s knee did not improve, Dr. Naccari referred him to Dr. Veca, an orthopedic surgeon.
At the conclusion of his testimony, completely unsolicited by either counsel, Dr. Naccari testified:
“If I may make a statement, it may help or it may confuse the situation, but it’s my opinion that the patient is honest from what I’ve known of him and that he did indeed have an accident March 31 for which I saw him in July. I do believe that his knee injury was to his left and that he did complain of some complaints referable to his right knee, but that subsequently, that at no time, did he have any real fantastic findings referable to that right knee, but that on the second accident which was a motorcycle accident he did indeed have evidence of severe trauma to the point that I can see from visit to visit to visit he did indeed deteriorate to the point that it did require the care of an orthopedic surgeon and I immediately recognized that it was out of my field, and whatever injury there is, that second accident certainly, in my opinion, had to have a great deal to do with what happened or what may be wrong with the knee at this time, although he did indeed have some earlier injury and maybe this aggravated it. * * * ft
Dr. Kenneth Veca testified that he saw plaintiff for the first time approximately two weeks after the July 4th accident at which time plaintiff had swelling in the knee. He stated that at that time he did not feel a ligament injury had occurred but that the possibility of a torn cartilage did exist. More importantly, however, Dr. Veca stated that plaintiff’s injury to the right knee was recent because of the fluid which was exuded from the joint when it was aspirated, indicating that it is more probable than not that origin of the serious right knee injury was related to the July 4th motorcycle accident and not to the earlier March 31st accident. On cross-examination, Dr. Veca testified that he had no knowledge that plaintiff had problems with his right knee prior to the motorcycle accident because in the history he took from plaintiff, he did not state that he had had a previous right knee injury.
Dr. Stuart Phillips, another orthopedic surgeon, saw plaintiff for a back injury after his third accident of August 7, 1973. At that time Dr. Phillips noticed that plaintiff had had an injury to the right knee. The most significant part of Dr. Phillips’ testimony is that plaintiff related to him at that time that the right knee injury was sustained in a motorcycle accident.
Considering the testimony of Drs. Nac-cari, Phillips and Veca, we conclude that plaintiff failed to establish by a preponderance of the evidence that the serious right knee injury (possible torn cartilage) resulted from the accident which occurred on March 31st involving defendant and which constitutes the basis of plaintiff’s claim. Accordingly, the judgment dismissing plaintiff’s suit is affirmed.
Affirmed.